WESTERMAN BALL EDERER  
 MILLER ZUCKER & SHARFSTEIN, LLP  
1201 RXR Plaza  
Uniondale, New York 11556  
Tel.: (516) 622-9200 (telephone)  
Jeffrey A. Miller, Esq.  
William C. Heuer, Esq.  
*Attorneys for 1204 Broadway NYC LLC*

Hearing Date/Time: June 1, 2017, 11:30 a.m. EST  
Deadline for Objections: May 25, 2017

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**  
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X  
In re                                              :    Case No. 11-15842 (MG)

KIM, LUI, J.,                                      :    Chapter 7 (Converted)

                     Debtor.          :  
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**MOTION FOR ENTRY OF AN ORDER (i) PROVIDING**  
**FOR THE RELEASE OF FUNDS HELD IN THE COURT REGISTRY,**  
**AND (ii) APPROVING THE FORM AND MANNER OF NOTICE**

**TO:   THE HONORABLE MARTIN GLENN**  
       **UNITED STATES BANKRUPTCY JUDGE**

1204 Broadway NYC LLC ("**1204 Broadway**"), by its attorneys, Westerman Ball Ederer Miller Zucker & Sharfstein, LLP, hereby submits this motion ("**Motion**") for entry of an order, pursuant to section 105(2) of title 11, United States Code **("Bankruptcy Code")** and Rules 2002, 7067, and 9007 of the Federal Rules of Bankruptcy Procedure **("Bankruptcy Rules")**, (i) directing the Clerk of the Court to release Surplus Funds (defined below), presently held in the court registry, to 1204 Broadway to be applied towards the Judgment (defined and described below) obtained by 1204 Broadway in State Court proceedings, in accordance with a Stipulation and Order that was "So Ordered" by this Court on June 24, 2014 [ECF Dkt. Nos. 110, 112], and (ii) approving the form and manner of notice given in connection with this Motion. In support of this Motion, 1204 Broadway respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. By Order entered on April 7, 2017, the Court reopened the Debtor's chapter 7 bankruptcy case at the request of 1204 Broadway. *See* Dkt. No. 124. Although the Court reopened this case, the ultimate question of disposition of the Surplus Funds, held in the Court's registry, was not resolved. *See* Dkt. No. 124 at p.7.

2. As was set out in detail in 1204 Broadway's motion to reopen this case, Dkt. No. 119 (the "**Motion to Reopen**"), 1204 Broadway recently obtained a judgment for more than $4 million in a plenary action in the New York County Supreme Court against Lui J. Kim, the above-referenced debtor ("**Kim**" or "**Debtor**").[1]

3. Now that this case has been reopened, the relief sought by 1204 Broadway through this Motion is a release of the Surplus Funds currently being held in the Court registry (pursuant to a Stipulation that was So-Ordered by this Court) to apply toward the judgment obtained by 1204 Broadway.

**BACKGROUND**

A. **The Kim Bankruptcy Case**

4. On December 22, 2011 (the "**Petition Date**"), Kim filed a voluntary petition for relief under chapter 11 of title 11, United States Code ("**Bankruptcy Code**"). ECF Dkt. No. 1. The case was converted to one under Chapter 7 on March 14, 2012. Robert Geltzer, Esq., was appointed as Chapter 7 Trustee ("**Trustee**") on March 15, 2012. Dkt. No. 27.

B. **The CKR Bankruptcy Case**

5. On July 12, 2012, Carolle Kim Realty, Inc. ("**CKR**"), a company wholly owned

---

[1] 1204 Broadway's Motion to Reopen sets out in detail additional factual background relevant to this Motion seeking a release of the Surplus Funds from the Court's registry. 1204 Broadway incorporates herein the full factual discussion contained in the Motion to Reopen, as if fully set forth herein, including the Exhibits thereto.

2

by Kim, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *See* Case No. 12-13400 ("**CKR Bankruptcy**").[2] The Trustee in this case was also appointed as Chapter 7 Trustee in the CKR Bankruptcy case. Among the assets scheduled by CKR was an apartment building located at 134 East 36th Street, New York, New York (the "**Property**").

### C. Sale of the Property Free and Clear

6. By Order entered on August 27, 2012, the Trustee was authorized, *nunc pro tunc*, to operate CKR's real estate business on a limited basis. CKR Dkt. No. 25. By Order entered on September 20, 2012 in the CKR Bankruptcy case ("**Sale Order**"), this Court authorized and approved the sale of the Property by the Trustee to the Vaid Family Descendants Trust and its permitted assignees, including 1204 Broadway, for the purchase price of $3.3 million. Sale Order, CKR Dkt. No. 32.

### D. Kim's Unlawful Occupancy

7. After 1204 Broadway acquired the Property, Kim intruded upon and/or squatted in Apartment 1F ("**Apartment**") at the Property without permission or consent. This prevented 1204 Broadway from doing necessary renovations and caused 1204 Broadway substantial harm. Kim also caused extensive damage to the Property. He vandalized the property and caused numerous unsafe conditions, code violations, and other problems. *See* Dkt. No. 124, p. 2.

8. In December 2012, 1204 Broadway commenced a holdover proceeding in the Civil Court of the State of New York, County of New York (the "**Landlord-Tenant Court**"), titled *1204 Broadway NYC LLC v. Lui Kim*, L&T Index No. 91540/12 (the "**Holdover Proceeding**") to evict Kim from the Apartment and to obtain a warrant of eviction and judgment of possession. After a trial, the Landlord-Tenant Court issued a Decision/Order dated October 2, 2013 (the "**Landlord-Tenant Decision**"), in which it awarded to 1204 Broadway a final

---

[2] Any citations to the Court's docket in the Carolle Kim Realty case are indicated as "CKR Dkt. No. __".

judgment of possession for the Apartment and a warrant of eviction. A copy of the Landlord-Tenant Decision is attached hereto as Exhibit "A".

### E. 1204 Broadway's State Court Plenary Action

9. 1204 Broadway also commenced a plenary action in the Supreme Court of the State of New York, County of New York, titled *1204 Broadway v. Lui Kim*, Index No. 104280-2012 (Sup. Ct, New York County) (the "**State Court Plenary Action**"), seeking damages for the harm caused by Kim. 1204 Broadway asserted claims for trespass and prima facie tort, and sought compensatory and punitive damages. A copy of the Amended Verified Complaint in the State Court Plenary Action ("**Amended Verified Complaint**") is attached as Exhibit "B".

10. On December 5, 2013, the State Court granted 1204 Broadway a judgment on the issue of liability ("**Liability Judgment**"), holding Kim liable to 1204 Broadway "on all causes of action in the Amended Verified Complaint." A copy of the Liability Judgment is attached as Exhibit "C". 1204 Broadway thereafter filed and served Notice of Entry of the Liability Judgment and sought the scheduling of an inquest to determine the amount of damages.

11. Kim did not appeal the Liability Judgment.

### F. Administration of Kim's Bankruptcy Case: Trustee's Final Report

12. On April 4, 2014, prior to the award of damages set out in the Liability Judgment, the Trustee filed the Trustee's Final Report ("**Final Report**") in this bankruptcy case. Dkt. No. 104. The Final Report indicated that the amount of surplus to be returned to Kim, after payment of all claims and interest, was anticipated to be $1,029,689.75. Dkt. No. 104, p. 19.

### G. The Parties' Stipulation

13. On June 12, 2014, 1204 Broadway, the Trustee, and the Debtor entered into a stipulation whereby the parties agreed that the surplus funds held by the Chapter 7 Trustee

4

aggregated $1,031,958.41 (the "**Surplus Funds**") and that the Surplus Funds would be deposited with the Clerk of the Court in this chapter 7 bankruptcy case, pending entry of a final judgment in the State Court Plenary Action. This Court "So Ordered" the parties' stipulation by Memorandum Endorsed Order dated June 24, 2014. *See* Dkt. No. 110 (the "**Stipulation and Order**"). Consistent with the Stipulation and Order, on June 30, 2014, this Court entered an Order directing that the Surplus Funds be deposited into the court registry. Dkt. No. 112.

14. On December 15, 2014, this Court entered an Order of Final Decree [Dkt. No. 117], and on December 18, 2014, the case was closed.

**H. Motion Practice And Kim's Repeated Defaults In the State Court Plenary Action**

15. After the Liability Judgment was entered in the State Court Plenary Action, the case was referred to a Referee (Hon. Ira Gammerman) for a determination of damages.

16. The parties had a hearing before the Referee on the issue of damages on March 9, 2015. The Referee, however, recommended that 1204 Broadway be awarded only $116,468.00 in compensatory damages with no punitive damages or legal fees.

17. 1204 Broadway then asked the State Court to confirm the Referee's Report in part and deny it in part, and sought an order awarding it: (i) $815,611.35 in compensatory damages; (ii) $2,446,834.05 in punitive damages; (iii) $230,946.97 for plaintiff's legal fees, costs and disbursements related to defendant's misconduct; and (iv) pre-judgment interest at the statutory rate of 9% per year from October 14, 2012. 1204 Broadway's motion papers included the transcript of the hearing before the Referee, a fact affidavit describing Kim's misconduct and the damages it caused, and hundreds of pages of evidence demonstrating 1204 Broadway's damages.

18. Kim opposed that motion, but did not submit a fact affidavit rebutting any of the evidence of his criminal conduct (including, without limitation, vandalism, perjury and extortion)

5

or of plaintiff's damages.

19. 1204 Broadway's damages motion was returnable on January 14, 2016. Kim's attorney failed to appear, and the State Court issued a decision granting 1204 Broadway's damages motion on default. *See* Exhibit "D".

20. As a courtesy, 1204 Broadway agreed to vacate that default and to schedule a new argument date. On February 9, 2016, the parties entered into a stipulation (that was So-Ordered by the State Court) in which they agreed that oral argument on 1204 Broadway's damages motion would be scheduled for April 14, 2016. *See* Exhibit "E". But on April 14, 2016, Kim's attorney once again failed to appear, and the State Court issued yet another decision again granting 1204 Broadway's damages motion on default. *See* Exhibit "F".

21. The April 14, 2016 Order directed 1204 Broadway to serve and file a proposed Order on damages. *Id*. 1204 Broadway submitted a proposed Order on May 5, 2016 and served a copy on Kim's counsel. *See* Exhibit "G". Kim never opposed 1204 Broadway's proposed Order on damages, nor did Kim ever submit a proposed Order of his own.

22. Even though Kim defaulted multiple times, the State Court ordered counsel for the parties to appear on December 19, 2016 so that Kim's counsel would have another opportunity to address the damages issue. A transcript of that hearing is attached as Exhibit "H". During that hearing, the State Court read its decision into the record and addressed all of the arguments made by both sides. The State Court considered all of the evidence of Kim's misconduct and determined that 1204 Broadway was entitled to compensatory damages on both its trespass and prima facie tort claims along with punitive damages, legal fees, and statutory pre-judgment interest from October 14, 2012 going forward. The State Court was still hopeful that the parties would settle the case so it did not award a specific amount of damages at that time,

6

and instead told counsel to expect a written decision on damages on January 30, 2017 if the case did not settle by then. *See* Exhibit "H" at p. 18.

23. The case did not settle, and Kim's attorney failed to appear on January 30, 2017. On that date, the State Court issued an Order awarding 1204 Broadway: (i) $815,611.35 in compensatory damages; (ii) $2,446,835.05 in punitive damages; and (iii) statutory pre-judgment interest from October 14, 2014. *See* Exhibit "I". The State Court directed the clerk to enter judgment accordingly. *Id*.

24. On March 2, 2017, the State Court entered judgment (the "Judgment") in favor of 1204 Broadway in the amount of $4,550,583.54, which includes: (i) compensatory damages in the amount of $815,611.35; (ii) $2,446,835.05 in punitive damages; (iii) statutory pre-judgment interest in the amount of $1,287,102.14; and (iv) costs and disbursements in the amount of $1,035.00. The amount awarded to 1204 Broadway pursuant to the Judgment far exceeds the amount of the Surplus Funds. A copy of the Judgment is attached hereto as Exhibit "J".

25. 1204 Broadway now seeks entry of an Order authorizing and directing the release of the Surplus Funds to 1204 Broadway, to apply toward the Judgment.

## JURISDICTION AND BASIS FOR RELIEF

26. The Court has jurisdiction over this Motion pursuant to section 1334(a) of title 28, United States Code ("Title 28"). Venue of this case is proper pursuant to section 1408 and 1409 of Title 28. This matter is a "core" proceeding pursuant to sections 157(b)(2)(A) and (O) of Title 28. The statutory predicates for the relief sought in this Motion are Bankruptcy Code sections 105(a) and Bankruptcy Rules 2002, 7067, and 9007.

7

**RELIEF REQUESTED**

**A. Release of Funds to 1204 Broadway**

27.     The parties specifically contemplated that the Surplus Funds would be held in the Court's registry pending the entry of final judgment in the State Court Plenary Action. The Court approved that agreement. *See* Dkt. No. 110. Judgment has now been entered in the State Court Plenary Action in 1204 Broadway's favor, and the amount due to 1204 Broadway substantially exceeds the amount of the Surplus Funds (judgment in the amount of $4,550,583.54, but just $1,031,958.41 in Surplus Funds). The Trustee has already been compensated in this case and has been discharged of his duties. There is no need for further administration of the Debtor's estate except for authorization of the release of the Surplus Funds to 1204 Broadway.[3]

28.     Rule 67 of the Federal Rules of Civil Procedure (the "**Federal Rules**") governs the deposit of funds into the registry of the federal district courts, generally. *See* Fed. R. Civ. P. 67 (entitled "Deposit into Court"). Rule 67 of the Federal Rules is incorporated into adversary proceedings pursuant to Rule 7067 of the Bankruptcy Rules. *See* Fed. R. Bankr. P. 7067. Rule 67 is not, however, more generally incorporated into bankruptcy cases and proceedings, including contested matters, absent an order of the Court. *See* 10 COLLIER ON BANKRUPTCY ¶ 7067.01 (Resnick & Sommer, 16th ed.) ("In the absence of an order to the contrary, it is inapplicable in contested matters, as it is not included in the list of applicable Part VII Rules in Bankruptcy Rule 9014.").

29.     By Memorandum Order entered on June 24, 2014, the Court permitted the

---

[3] 1204 Broadway's Motion to Reopen included a similar request for relief, but the Court did not make any determination as to distribution of the Surplus Funds. *See* Dkt. No. 124, p. 7.

8

Surplus Funds to be deposited with the Court registry. Dkt. No. 110. Although the Memorandum Order does not expressly identify Bankruptcy Rule 7067 (or Federal Rule 67) as the source of authority for the relief granted, it is respectfully submitted that the Memorandum Order (permitting the deposit) provides a sufficient basis for application of the principles underlying Bankruptcy Rule 7067 (and Federal Rule 67) in connection with 1204 Broadway's request for a release of the Surplus Funds.

30. As is noted above, Bankruptcy Rule 7067 merely incorporates Federal Rule 67. *See* Fed. R. Bankr. P. 7067. Where the release of funds held in a court's registry are concerned, Federal Rule 67 refers to 28 U.S.C. § 2042, which provides (in pertinent part):

> No money deposited [with the court's registry] shall be withdrawn except by order of court.

*See* 28 U.S.C. § 2042.[4]

31. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C § 105(a). The Surplus Funds were specifically set aside, by Order of this Court and consistent with an agreement that was memorialized in an order of the State Court, for application to amounts owed to 1204 Broadway once the State Court proceedings had been concluded. The Judgment marks the conclusion of the State Court proceedings. The Judgment is final. The amount held as Surplus Funds is insufficient to pay the full amount awarded through the Judgment. 1204 Broadway respectfully submits that it has demonstrated an entitlement to distribution of the full amount of funds held in the Court's registry as Surplus

---

[4] The statute also provides for the transfer of funds held in the Court registry, but which have remained unclaimed for at least five years, to the United States Treasury. 28 U.S.C. § 2042. Once funds have been transferred to the Treasury, any claimant seeking a release of those funds must do so on notice to the United States Attorney and must demonstrate "full proof of the right" to the funds. *See id.* Those provisions do not apply to the case at hand, in that the Surplus Funds remain in the Court's registry and have not been transferred as unclaimed to the Treasury.

Funds in this case.

32.  Accordingly, 1204 Broadway respectfully requests that, consistent with the terms of the June 12, 2014 stipulation governing the Surplus Funds [Dkt. No. 110], the Court utilize its power, pursuant to 11 U.S.C. § 105(a), and authorize the Clerk of the Court to disburse the Surplus Funds from the Court's registry to 1204 Broadway.

### B. Notice

33.  Rule 2002 of the Bankruptcy Rules addresses the extent to which notice must be given in matters such as this Motion, and provides in pertinent part:

> (a) Twenty-One-Day Notices to Parties in Interest. Except as provided in subdivisions [not relevant here], the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees *at least 21 days' notice by mail of*:
>
> * * *
>
> (2) *a proposed use, sale, or lease of property of the estate other than in the ordinary course of business*, unless the court for cause shown shortens the time *or directs another method of giving notice*[.]

Fed. R. Bankr. P. 2002(a)(2) (emphasis added).

34.  Here, application of Rule 2002(a)(2) requires that twenty-one (21) days' notice of this Motion be given, by mail.

35.  This Motion was filed on April 27, 2017. The notice that accompanied the Motion indicated that objections were due on or before May 25, 2017, and made clear that the Motion was scheduled for a hearing before the Court on June 1, 2017. Thus, more than twenty-one (21) days' notice was given by regular mail.

36.  The Motion was served on a number of people, in an effort to make certain that sufficient notice was given of the relief sought herein.

37.  The Debtor's case was commenced by the filing of a voluntary chapter 11

10

petition. Debtor's electronic signature is noted on the petition, as is his counsel's. *See* Dkt. No. 1, p. 3. *Debtor's counsel at the commencement of this case, Todd S. Cushner of Garvey Cushner Associates, PLLC, has been served with this Motion.* Debtor's petition noted two (2) addresses for Debtor: (i) 1 East Mill Road, Great Neck, New York 11021 and (ii) 123 East 36th Street, New York, New York 10016. *Debtor was served with this Motion at each of those addresses.* Later in the case, on June 6, 2012, the Debtor filed amended Schedules. Dkt. No. 52. Included with that case filing was a petition coversheet, which indicated these same two addresses for the Debtor, and the petition coversheet contained the Debtor's ink signature. *See id.*[5]

38.  Roughly six (6) weeks into the case, the United States Trustee filed a motion to convert the case from chapter 11 to chapter 7, with the appointment of a trustee. In sum and substance, the motion to convert alleged a lack of compliance with reporting requirements, failure to abide by the Bankruptcy Code, and a lack of cooperation by the Debtor in the bankruptcy process. *See generally*, Dkt. No. 20.

39.  Shortly before the motion to convert was scheduled for a hearing, and less than three (3) months into the Debtor's chapter 11 case, Debtor's counsel sought to withdraw from his representation. *See* Dkt. No. 26. Among the reasons noted in the motion to withdraw were a lack of communication and unresponsiveness by the Debtor to inquiries from counsel. Counsel noted that he "[could not] respond to requests made by the U.S. Trustee due to the lack of communication and Debtor's failure to produce documentation." *See id.* at ¶ 9; *see also* Status Report, Dkt. No. 37.

40.  The motion to withdraw went forward without challenge by the Debtor and the

---

[5] In a case filing made just a few weeks later, on August 22, 2012, Debtor's counsel nonetheless stated that the 123 East 36th Street address was, in fact, *incorrect*. Nonetheless, considering the multiple addresses given by the Debtor and the difficulty that all parties have had making contact with the Debtor – *even his own attorneys* – this Motion was served upon Debtor at the 123 East 36th Street address – *in addition to* the 134 East 36th Street address.

11

relief sought was granted. *See* Dkt. No. 39. The motion to convert, too, was granted, and Trustee was appointed. *See* Dkt. Nos. 27, 28. *The Trustee, Robert L. Geltzer, has been served with this Motion.* The Trustee's counsel, Nicholas J. Brannick and Andrea Fisher of Squire Sanders (US) LLP, at 30 Rockefeller Plaza, New York, New York 10012, *have been served with this Motion.* Later, Robert A. Wolf of Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, NY 10018, also appeared as counsel to the Trustee. Mr. Wolf, too, *was served with this Motion.*

41. Just a few weeks after the order was entered approving the relief sought through the motion to withdraw as counsel, new counsel for the Debtor filed an appearance. Debtor's new counsel is Daniel Robert Miller, Esq., with an address of 503 4th Avenue, Brooklyn, New York 11215. Dkt. No. 49. *Mr. Miller, who remains listed on the docket in the Debtor's chapter 7 proceedings as counsel to the Debtor, was served with this Motion.*

42. On July 19, 2012, a letter from the Debtor was filed on the Court's docket in this case. *See* Dkt. No. 60. That letter indicated an address for the Debtor that was similar to, but nonetheless slightly different than, one of the addresses the Debtor had listed on his petition. The letter indicated an address of $134^6$ East 36th Street, Ground Floor, New York, New York, 10016. *Debtor was served with this Motion at the 134 East 36th Street address.*

43. On July 12, 2012, *Carolle Kim Realty, Inc.*, filed a voluntary chapter 7 proceeding with the Court. Case No. 12-13040. The Debtor owns Carolle Kim Realty. *See* Dkt. No. 70, ¶ 14. Daniel Miller – counsel to the Debtor in this chapter 7 case – is also listed as counsel to the Debtor in the Carolle Kim Realty chapter 7 case. Mr. Geltzer – the Trustee in the Debtor's individual chapter 7 case – was also appointed as chapter 7 trustee in the Carolle Kim Realty

---

[6] As compared with 123. *See* Dkt. No. 1.

12

case, and he retained the same counsel as he did in Mr. Lui's individual chapter 7 case. *All of these parties*, as is noted above, were served with this Motion.

44. In the State Court litigation matters involving 1204 Broadway and the Debtor, two law firms represented him: Margarita Rubin of the firm Rubin & Rubin, P.C., with an office at 212 Elmwood Road, South Salem, New York 10590, and Howard C. Chun, of Kaplan & Chun, P.C., 207 East 4th Street, 1st Floor, New York, New York 10009. *Ms. Rubin and Mr. Chun were served with this Motion.*[7]

45. Finally, when Debtor's initial counsel in this case sought to withdraw, he filed a "final report" on the docket. *See* Dkt. No. 37. In his final report, counsel indicated that Daniel J. Park, a relative of the Debtor, was also the Debtor's accountant (and the accountant for Carolle Kim Realty). *See id.* at p. 2. Indeed, Mr. Park is noted in the Debtor's Schedules as the Debtor's accountant. *See* Dkt. No. 1, p. 38. Mr. Park's office address is indicated as 1270 Broadway, Suite 305, New York, New York 10001. *Mr. Park has been served with this Motion.*

46. As is indicated in the Affidavit of Service relating to this Motion, this Motion was served upon each of the individuals identified above by regular mail, as is required by Bankruptcy Rule 2002. The Debtor was served at the addresses given by him in his petition, signed under oath and filed with the Court. *See* Dkt. Nos. 1, 52.[8] More than twenty-one (21) days' notice was given for the hearing scheduled on this Motion, as is required by Bankruptcy

---

[7] 1204 Broadway notes that Ms. Rubin was present in court when the Court heard argument on 1204 Broadway's motion to reopen this case. *See* Dkt. No. 124 (Memorandum Opinion and Order).

[8] 1204 Broadway notes that Bankruptcy Rule 9014, which governs contested matters, provides for service in accordance with Bankruptcy Rule 7004. Bankruptcy Rule 7004(b)(9) provides for service upon a debtor "at the address shown in the petition or to such other address as the debtor may designate in a filed writing." Although Bankruptcy Rule 7004 generally speaks to the service of a summons and complaint in adversary proceedings, its incorporation into contested matters through Bankruptcy Rule 9014 indicates that its provisions are more broadly applicable. Here, the Debtor was served at both addresses noted in his petition, as well as at the "corrected" address he noted in subsequent case filings.

13

Rule 2002. The requirements of the Bankruptcy Rules have been met, and service upon the Debtor was proper. *See* Fed. R. Bankr. P. 2002.

47. To the extent that the Debtor *does not appear* at the hearing on this Motion, and/or to the extent that any of the mailings sent directly to the Debtor are returned as *undeliverable*, 1204 Broadway respectfully submits that the efforts made to serve the Debtor, and to provide adequate notice to the Debtor of the relief sought herein, are nonetheless sufficient to provide notice that satisfies the requirements of the Bankruptcy Rules. *See* Fed. R. Bankr. P. 2002(a)(2) (permitting alternative methods for giving notice).

48. The Court has authority to permit alternative methods of notice. Bankruptcy Rule 2002(a)(2), which addresses the sale, use and lease of estate property outside the ordinary course of business, specifically permits the Court, "for cause shown," to permit alternative methods of notice. *See* Fed. R. Bankr. P. 2002(a)(2). "Cause" exists on the facts present.

49. The Debtor has provided a number of different addresses to creditors and the Court. Those addresses were indicated in case filings on the docket in federal court. He has admitted that some of the addresses he gave were incorrect and mistakes. He made that admission despite the fact that he had, in essence, recently (at the time) reaffirmed the incorrect address by filing amended schedules with the incorrect address listed.

50. The U.S. Trustee sought conversion owing, in part, to a lack of responsiveness by the Debtor.

51. Debtor's own counsel sought to be relieved of his obligation to represent the Debtor, owing, in part, to the fact that the Debtor was not responding to his inquiries, and was not providing necessary documentation.

52. Debtor's approach in the State Court litigation was no different. Debtor had

14

multiple law firms representing him. Debtor and/or his counsel failed to appear at hearings.

53. Recently, on 1204 Broadway's Motion to Reopen, although the Debtor did not himself appear on the record before the Court, one of the law firms representing him in State Court, did.

54. 1204 Broadway respectfully submits that these facts demonstrate that "cause" exists for permitting "another method of giving notice" to the Debtor. *See* Fed. R. Bankr. P. 2002(a)(2). 1204 Broadway further respectfully submits that, the efforts to provide notice undertaken in connection with this Motion, are appropriate and sufficient.

55. The Debtor was served with this Motion at every address he provided to the Court in his petition and case filings.

56. The Trustee and all of his counsel, in this case and in the Carolle Kim Realty case, were served.

57. Counsel to Carolle Kim Realty, too, was served (the same counsel who is presently indicated as counsel of record to the Debtor in this case).

58. The Debtor's relative, his accountant (as was indicated in the Debtor's Schedules, see Dkt. No. 1), was served with this Motion.

59. A substantial number of parties in these and the Carolle Kim Realty proceedings have been served with the Motion. Many of those parties may have, and/or are likely to have, the ability to contact the Debtor to make him aware of this Motion and the relief sought. What has been done, in effect, is "publication" of this Motion and the relief sought, to a specific and targeted audience. *Cf.* Fed. R. Bankr. P. 2002(l) (permitting publication as a means of supplementing notice where deemed appropriate by the Court). 1204 Broadway respectfully submits that, on the facts present, the manner and extent of notice given are sufficient even if the

Debtor does not appear and/or if the documents served upon the Debtor are returned as undeliverable.

60. In sum, 1204 Broadway respectfully submits that (i) notice of this Motion was properly given pursuant to Bankruptcy Rule 2002(a)(2), and (ii) that if mailings sent to the Debtor are returned as "undeliverable," "cause" exists for authorizing an alternative form of notice and that the notice that has already been provided by 1204 Broadway, is sufficient. 1204 Broadway seeks confirmation from the Court that the notice given was sufficient, admittedly on a *post-facto* basis, so that the Surplus Funds can be distributed and this case once again closed, without delay.

## **CONCLUSION**

For each of the foregoing reasons, 1204 Broadway respectfully requests that this Court enter the attached proposed order (i) releasing the Surplus Funds presently held in the court registry to 1204 Broadway, and then re-closing the Debtor's case, (ii) to the extent the Court deems it necessary, approving of the form and manner of notice given with respect to this Motion, and (iii) granting such other and further relief as this Court deems just and appropriate.

Dated: Uniondale, New York
April 27, 2017

                WESTERMAN BALL EDERER
                MILLER ZUCKER & SHARFSTEIN, LLP

            By: /s/ William C. Heuer
                Jeffrey A. Miller, Esq.
                William C. Heuer, Esq.
                1201 RXR Plaza
                Uniondale, New York 11556
                (516) 622-9200

                *Attorneys for 1204 Broadway NYC LLC*

1565970